# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

COURTNEY FOGLE**,** on Behalf of Herself
and All Others Similarly Situated,

Plaintiff,

**vs.**

9199-4467 QUEBEC INC. d/b/a EARTH
RATED,

Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff, Courtney Fogle ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Earth Rated ("Defendant" or "Earth Rated").   Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## FACTUAL ALLEGATIONS

1.      This is a class action lawsuit on behalf of purchasers of Defendant's product, Earth Rated Certified Compostable Poop Bags (the "Product"), in the United States.

2.      Defendant manufactures and sells a number of pet waste products under the "Earth Rated" label. Defendant sells these products throughout the United States, including in the State of New York.

3.      Defendant holds itself out as an environmentally friendly brand. One of Defendant's products is the Earth Rated Certified Compostable Poop Bags. The Product comes in three different sizes: 60 bags, 105 bags, and 225 bags.

4.      On the packaging of the 60-count version of the Product, Defendant represents that the Product is "Certified Compostable." The representation is the same on the packaging for the 105-count and 225-count versions of the Product—which are identical in all respects except for the size—Defendant represents that the Product is "Certified Compostable."

5.      Defendant makes similar claims on its website. For instance, Defendant represents that the Product "meet[s] the ASTM D6400 standard for municipal composting as well as the EN13432 Home and Industrial standards for compostability".

6.      Defendant further represents on its website that the Product is "certified for home composting" and are compostable at a "city compost" facility.

7.      On each version of the Product and on its website, Defendant represents that the Product is capable of being composted. Reasonable consumers reviewing the Product's packaging would believe the same based on Defendant's representations.

8.      Problematically for consumers, these claims are false and misleading. Indeed, the Federal Trade Commission ("FTC") has stated that "compostable" claims on dog waste products are "generally untrue."[1]

---

[1] FTC Staff Warns Marketers and Sellers of Dog Waste Bags That Their Biodegradable and Compostable Claims May Be Deceptive, Feb. 3, 2015, https://www.ftc.gov/news-events/press-releases/2015/02/ftc-staff-warns-marketers-sellers-dog-waste-bags-their.

9.    As the FTC notes "consumers generally think that unqualified "compostable claims" mean that a product will safely break down at the same rate as natural products, like leaves and grass clippings, in their home compost pile. If marketers disclose that a product will only compost in commercial or municipal facilities, consumers think that those facilities are generally available in their area. However, dog waste is generally not safe to compost at home, and very few facilities accept this waste.

10.    More specifically, dog waste cannot be composted because it can contain harmful contaminants (e.g., E. Coli). Even in backyard composting, the U.S. Environmental Protection Agency cautions that dog waste can contain harmful parasites, bacteria, viruses, or pathogens.

11.    As environmental regulatory bodies have noted "Animal waste contains two main types of pollutants that harm local waters: nutrients and pathogens. When this waste ends up in water bodies, it decomposes, releasing nutrients that cause excessive growth of algae and weeds. This makes the water murky, green, smelly, and even unusable for swimming, boating, or fishing. The pathogens, disease-causing bacteria, and viruses can also make local waters

unswimmable and unfishable and have caused severe illness in humans. Animal waste doesn't simply decompose.[2]

12.     On top of the foregoing, industrial composting of dog waste is not available in the United States. Defendant even admits as much on a blog post on its website that is not linked in any way to the Product's page.[3]

13.     The FTC has declared such practices to be deceptive. 16 C.F.R. § 260.7(a) ("It is deceptive to misrepresent, directly or by implication, that a product or package is compostable."). Per federal regulations, "[t]o avoid deception about the limited availability of municipal or institutional composting facilities, a marketer should clearly and prominently qualify compostable claims if such facilities are not available to a substantial majority of consumers or communities where the item is sold." 16 C.F.R. § 260.7(d).

14.     These federal regulations go on to give examples of deceptive conduct, including but not limited to the following:

**Example 2:** A garden center sells grass clipping bags labeled as "Compostable in California Municipal Yard Trimmings Composting Facilities." When the bags break down, however, they release toxins into the compost. The

---

[2] DO YOU SCOOP THE POOP? - https://cfpub.epa.gov/npstbx/files/Pet%20care%20fact%20 sheet.pdf (emphasis added).
[3] 8 WAYS TO CELEBRATE EARTH DAY 2021 WITH YOUR DOG - https://earthrated.com/en/blog/8-ways-to-celebrate-earth-day-2021-with-your-dog/.

claim is deceptive if the presence of these toxins prevents the compost from being usable.

**Example 4:** Nationally marketed lawn and leaf bags state "compostable" on each bag. The bags also feature text disclosing that the bag is not designed for use in home compost piles. Yard trimmings programs in many communities compost these bags, but such programs are not available to a substantial majority of consumers or communities where the bag is sold. The claim is deceptive because it likely conveys that composting facilities are available to a substantial majority of consumers or communities. To avoid deception, the marketer should clearly and prominently indicate the limited availability of such programs. See 16 C.F.R. § 260.7(d) (emphasis added).

15.    These examples are analogous to the issue here with Defendant's Product, and illustrate why the "certified compostable" claim is deceptive. Like Example 2, the inability to compost dog waste due to the presence of parasites, bacteria, viruses, and pathogens prevents compost from being usable. And like Example 4, facilities that can compost dog waste are not available to most (if not all) U.S. consumers, and Defendant does not clarify this on the Product's packaging. Accordingly, the "certified compostable" claim is false and misleading because the Product is not capable of being composted.

16.     On the back panel of the 60-count version of the Product, Defendant purportedly includes a small print disclaimer in small font stating the Product is "Not suitable for backyard composting."

17.     Defendant also includes a small print disclaimer on the side panel of the 60-count version of the Product stating the Product "Should only be disposed of in commercial composting facilities where pet waste is accepted."

18.     The back panel of the 105-count and 225-count versions of the Product also includes a small print disclaimer in small font stating the Product "Should only be disposed of in commercial composting facilities where pet waste is accepted. These facilities may not exist in your area. If you want to compost your pet waste in a home compost, please ensure to only use the resulting compost on non-food crops."

19.     No reasonable consumer would expect that small print language on the back and side panels of the Product would contain language inconsistent with the representation that the Product is capable of being composted. Nor would a reasonable consumer expect that a "certified compostable" dog waste bag would not be capable of being composted.

20.     Further, even Defendant's disclaimers are misleading. Right above the disclaimer on the back panel of the 60-count version of the Product, Defendant proclaims in large font that the Product is "Compostable in Industrial Facilities."

This is reinforced by language on Defendant's website that states consumers can "put [the] compostable poop bags in [a] city compost." Defendant attempts to qualify this by saying that consumers should "[c]heck locally" because such facilities "do not exist in many communities." But, in fact, such facilities do not exist at all in the United States. The side panel disclaimer on the 60-count version of the Product is likewise deceptive because it gives the impression that there are commercial facilities that accept pet waste, which is not true. Moreover, the disclaimers are not "clearly and prominently indicate[d]," as the FTC requires. 16 C.F.R. § 260.7(d) (Example 4). 23. The back panel disclaimer of the 60-count version of the Product also states that the Product is "[n]ot suitable for backyard composting." But again, this is inconsistent with Defendant's website, which proclaims that a consumer can "put [the] compostable poop bags in [a] backyard compost." Moreover, the disclaimer is not "clearly and prominently indicate[d]," as the FTC requires. 16 C.F.R. § 260.7(d) (See Example 4).

21.     The back panel disclaimer of the 105-count and 225-count versions of the Product are no better. Again, the back panel disclaimer of these versions of the Product states that users should only dispose of the Product "in commercial composting facilities where pet waste is accepted," and that "[t]hese facilities may not exist in your area." But again, as Defendant admits on its website, such facilities do not exist at all in the United States. Moreover, the disclaimers are not

"clearly and prominently indicate[d]," as the FTC requires. 16 C.F.R. § 260.7(d) (Example 4).

22.     Accordingly, even Defendant's attempts to disclaim its misleading claims are themselves misleading and not consistently represented.

23.     The "certified compostable" claims are an example of "greenwashing." "Greenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers."[4]

24.     Companies make greenwashing claims to "capitalize on the growing demand for environmentally sound products."[5] For example, over the past five years, there has been a 71% rise in online searches for sustainable goods.[6]

25.     Further, according to a study by IBM and the National Retail Federation, nearly 70% of consumers in the United States and Canada think it is important that a brand is sustainable or eco-friendly. The same study also found

---

[4] GREENWASHING, INVESTOPEDIA, https://www.investopedia.com/terms/g/greenwashing.asp.
[5] Id.
[6] Cristianne Close, The global eco-wakening: how consumers are driving sustainability, World Economic Forum, May 18, 2021, https://www.weforum.org/agenda/2021/05/eco-wakening-consumers-driving-sustainability/.

that 70% of respondents who valued sustainability would be willing to pay, on average, 35% more for eco-friendly brands.[7]

26.    Modern consumers purchase products that claim to be environmentally friendly and are even willing to pay more for such products over their non-sustainable competitors.

27.    Defendant capitalizes on this market, and charges more for its dog waste bags that it claims are "certified compostable," as compared to those that lack such claims.

28.    Defendant represents that the Product is "certified compostable" and charges a price premium for the Product based on this representation. But that claim is false; dog waste is too dangerous to compost, and there are few – if any – facilities in the United States that compost dog waste. Accordingly, the "certified compostable" claim is false and misleading because the Product is not capable of being composted, and consumers would not have purchased the Product—or paid substantially less for it—had they known the certified compostable claim was not true.

29.    Plaintiff is a purchaser of the Product who assert claims on behalf of herself and similarly situated purchasers of the Product.

---

[7] Dinara Bekmagambetova, Two-Thirds of North Americans Prefer Eco-Friendly Brands, Study Finds, Barron's, Jan. 10, 2020, https://www.barrons.com/articles/two-thirds-of-north-americans-prefer-eco-friendly-brands-study-finds-51578661728.

**JURISDICTION AND VENUE**

30.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

31.     This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of Florida and purposefully availed itself, and continues to avail itself, of the jurisdiction of this Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

32.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made her purchase of the Product in this district and her purchased Product was delivered to, and used, in this district.

**THE PARTIES**

33.     Plaintiff Courtney Fogle is a resident of Brevard County, Florida who has an intent to remain there, and is therefore a domiciliary of Florida. In the

Summer of 2021, Plaintiff purchased a 120-count package of the Product from Pet Smart and paid $6.99 for the Product. Prior to her purchase of her Product, Plaintiff reviewed the product's labeling and packaging and saw that her Product was labeled and marketed as "certified compostable." In purchasing the Product, Plaintiff relied on Defendant's representations that the Product was "certified compostable." Plaintiff saw these representations prior to, and at the time of purchase, and understood them as representations that the Product was "certified compostable." Plaintiff did not realize the back panel of the Product contained information inconsistent with this representation, nor did she have a reason to know the same. Plaintiff relied on these representations and warranties in deciding to purchase her Product. Accordingly, those representations were part of the basis of the bargain, in that she would not have purchased her Product on the same terms had she known those representations were not true. In making her purchase, Plaintiff paid an additional amount for the Product above what she would have paid for Defendant's non-certified compostable dog waste bags based on the Product's environmentally friendly claim. Had Plaintiff known that the "certified compostable" claim was false and misleading, Plaintiff would not have purchased the Product, or would have paid substantially less for the Product.

34.     Defendant, Earth Rated, is a Canadian corporation with its principal place of business at 8500 Decarie Blvd., 7th Floor, Mont-Royal, Québec, H4P 2N2, Canada and is licensed to conduct business in Florida.

35.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## CLASS ACTION ALLEGATIONS

36.     **Class Definition:** Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative classes (the "Class"):

**Florida Class:**

All individual residents of the State of Florida who purchased the Product through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

37.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

38.     **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and Florida. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

39.     **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

40.     **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant committed the conduct alleged herein;

b. whether Defendant's conduct constitutes the violations of laws alleged herein;

c. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue,

or are misleading, or reasonably likely to deceive;

d. whether Defendant knew or should have known that the representations were false

or misleading;

e. whether Defendant knowingly concealed or misrepresented material facts

for the purpose of inducing consumers into spending money on the Product;

f. whether Defendant's representations, concealments and non-disclosures

concerning the Product are likely to deceive the consumer;

g. whether Defendant's representations, concealments and non-disclosures

concerning the Product violate the FDUTPA and/or the common law;

h. whether Defendant should be permanently enjoined from making the claims at issue;

and

i. whether Plaintiff and the Class are entitled to restitution and damages.

41.     **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b.  when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c.  this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d.  without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

42.  **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I

**For Violations of Florida's Deceptive and Unfair Trade Practices Act**

**Fla. Stat. 501.201 et seq.**

43.  Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs above as if fully set forth herein.

44.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

45.     Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

46.     The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Product was effective.

47.     Plaintiff and Class members relied upon these advertisements in deciding to purchase the Product.  Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

48.     Had Plaintiff known that the Product was not as advertised, she would not have purchased it. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

49.     Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

50.     Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

51.     Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product is not of the quality advertised.

## COUNT II

### For False and Misleading Advertising, Fla. Stat. § 817.41

52.     Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 1-29 of the Complaint as if fully set forth herein.

53.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

54.     On their website, in print advertisements, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact regarding the quality of its Product.

55.     Defendant knew that these statements were false.

56.     Defendant intended for consumers to rely on its false statements for the purpose of selling its Product.

57.     Plaintiff and Class members did in fact rely upon these statements. Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

58.     As a result of Defendant's misrepresentations, Plaintiff and Class members suffered damages in the amount paid for Defendant's Product.

59.    Plaintiff and Class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Unjust Enrichment

60.    Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 1-29 of the Complaint as if fully set forth herein.

61.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

62.    Plaintiff and Class members conferred a benefit on Defendant by purchasing the deceptively advertised Product at an inflated price.

63.    Defendant received the moneys paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

64.    Defendant accepted and retained the benefit in the amount of the profits they earned from Defendant's Product sales paid by Plaintiff and Class members.

65.    Defendant has profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

66.    Plaintiff does not have an adequate remedy at law against Defendant.

67.     Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendant derived from its deceptively advertised Product sales.

## COUNT IV

## Negligent Misrepresentation

68.     Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 1-29 of the Complaint as if fully set forth herein.

69.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

70.     Defendant misrepresented that its Product sold was of a lesser quality than advertised.

71.     At the time Defendant made these misrepresentations of material fact, Defendant knew or should have known that these representations were false or made the misrepresentations without knowledge of their truth or veracity.

72.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce, and did induce Plaintiff and the Class to purchase the Product from Defendant.

73.     Plaintiff and the Class would not have purchased the Product from Defendant if the true facts had been known.

74.    The negligent actions of Defendant caused damage to Plaintiff and the Class members. Consequently, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a.    Certify this action as a class action;

b.    Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c.    Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d.    Award equitable monetary relief, including restitution;

e.    Award pre-judgment and post-judgment interest at the legal rate;

f.    Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

g.    Award such other and further legal and equitable relief as this Court may deem just and proper.

"

"

"

"

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED: _____                        s/William C. Wright
                                           The Wright Law Office, P.A.
                                           FL Bar No. 138861
                                           515 N. Flagler Drive, Suite P-300
                                           West Palm Beach, FL 33410
                                           Telephone: (561) 514-0904
                                           willwright@wrightlawoffice.com

                                           DANIEL FAHERTY
                                           Telfer, Faherty, & Anderson P.L.
                                           FL Bar No. 379697
                                           815 S. Washington Ave., Suite 201
                                           Titusville, FL 32780
                                           Telephone: (321) 269-6833
                                           danfaherty@hotmail.com
                                           CGuntner@ctrfa.com